## MILLER ET AL. *v.* DILL ET AL.

[No. 17,940.    Filed January 28, 1898.]

EVIDENCE.—*Action to Cancel Note.—Cross-Examination.—Forgery.*—In an action to cancel a note on the ground that the same was forged, it was improper to ask a party plaintiff, on cross-examination, whether he had not heard his co-plaintiff make statements affecting the chastity of defendant, on the theory that the note in suit was executed by said plaintiff in compromise of a contemplated slander suit based upon such statement, where the examination in chief had not involved any inquiry as to said statement.   *p. 328.*

SAME.—*Action to Cancel Note.—Forgery.*—In the trial of an action brought to cancel a note on the ground of forgery, it is improper to show that plaintiff conveyed property held by him at the time of the alleged execution of the note, on the theory that plaintiff executed same to compromise and avoid a slander suit, and conveyed his property for the purpose of defeating the collection of the note, as there can be no inference from the mere conveyance of property that the grantor is a debtor.   *pp. 329, 330.*

SAME.—*Action to Cancel Note.—Forgery.*—In a suit to cancel a note on the ground of forgery, evidence offered to the effect that plaintiff and witness had talked about the note several times, and plaintiff had never denied its execution was properly rejected, where there was nothing in the evidence disclosing the character of such conversation from which it could be ascertained whether any reason existed for the denial of the execution thereof.   *pp. 330, 331.*

SAME.—*Expert Witness.—Forgery.*—No error is committed in refusing to permit an expert witness to testify that a forger, in disguising and imitating handwritings, is more particular at the beginning than at the closing of such effort.   *p. 331.*

SAME.—*Exception to Admission Of.—Objections Must be Specific.*—Objections made to the admission of evidence must be specific, objections made on the ground that the evidence is irrelevant, incompetent, and immaterial present no question for review.   *pp. 331, 332.*

SAME.—*Action to Cancel Note as a Forgery.—Slander.*—Where in the trial of an action to cancel a note as a forgery, defendant introduced evidence to the effect that plaintiff had uttered a slander against defendant by stating, in effect, that she was pregnant, and that when threatened with a suit for such slander, he had executed the note in suit and delivered it to her as genuine in settlement of her supposed damages, evidence going to show that at the time the alleged slander was uttered, defendant was in fact pregnant, was properly admitted for the purpose of determining the influences inducing plaintiff to execute the note.   *pp. 332, 333.*

Miller *et al. v.* Dill *et al.*

TRIAL.—*Examination of Witness.*—It will not be presumed that the trial court permitted an improper examination to continue, over objections sustained by it until it was itself prejudiced in favor of the examining party.  *p. 334.*

EVIDENCE.—*Expert Witness.—Action to Cancel Note.—Forgery.*—No error was committed in the trial of an action to cancel a note as a forgery in permitting witnesses to testify to the genuineness of plaintiff's signature to bank checks, which were not papers in the case and not admitted to be genuine, where no comparisons were made, and where the signatures so proved were rejected as evidence.  *pp. 334, 335.*

TRIAL.—*Introduction of Evidence out of Regular Order.—Discretion of Court.*—The introduction of evidence out of its regular order is within the sound discretion of the trial court, and, unless made to appear as an abuse of discretion, is not error.  *p. 335.*

EVIDENCE.—*Action to Cancel Note.—Forgery.*—In an action to cancel a note alleged to have been forged, evidence that defendant sold to witness a forged note and afterward went to the office of witness disguised and offered to sell him the note in suit was competent as a link in the chain of circumstances tending to show defendant's guilty knowledge of the forgery of the note.  *p. 335, 336.*

SAME.—*Weight Of.*—The Supreme Court cannot weigh and pass upon conflicts in the evidence, and if the evidence most favorable to the decision of the trial court, standing alone, is sufficient, the judgment must be upheld.  *p. 336.*

SAME.—*Action to Cancel Note.—Forgery.—Sufficiency of Evidence to Sustain Judgment.*—In an action to cancel a note on the ground that same was forged, evidence that the blank upon which the note was written was printed almost two years after the alleged execution of the note was sufficient of itself to sustain a judgment canceling such note.  *pp. 336, 337.*

COSTS.—*Consolidation of Causes of Action.—Apportionment of Costs.*—Where two causes were pending in which the evidence would be substantially the same, and by order of court the trial and proceedings were had in one cause, the finding therein to control the other cause, it will be presumed that the order of court was followed, and that no costs were made in the cause which was not tried, and the judgment of the trial court overruling a motion to apportion the costs between the two causes will be sustained.  *p. 337.*

From the Tippecanoe Circuit Court.  *Affirmed.*

*George P. Haywood, Charles A. Burnett* and *R. P. DeHart,* for appellants.

*R. P. Davidson* and *D. E. Storms,* for appellees.

HACKNEY, J.—In the lower court two suits were instituted by the appellees, Edwin S. Dill and Calvin Dill; one against the appellant, Anna Collins, and one against the said Anna Collins and the appellant, Henry A. Miller. In each suit it was sought to cancel, as a forgery, a note, in the one suit for $500.00, claimed to have been made to and held by said Anna Collins; and in the other suit for $600.00, claimed to have been made to said Anna Collins, and by her transferred to said Miller. The two suits were consolidated, and tried together upon the issues of general denial of the complaints, counterclaims seeking to recover upon the notes, and answers to the counterclaim in sworn denials of the execution of the notes. The questions for decision arise upon the motion for a new trial and a motion for the apportionment of costs.

The first question presented upon the motion for a new trial relates to the sustaining of appellees' objection to this question, asked of Calvin Dill upon cross-examination: "Isn't it a fact, Mr. Dill, that you yourself have heard Ed. say things affecting the chastity of Anna Collins during that summer?"

The relevancy of the question is urged upon the theory of the appellants that in the summer of 1891 the appellee Edwin S. Dill had been threatened by Anna Collins with a suit for slander, claimed to have been uttered by him in certain reflections upon her character for chastity, which threatened suit had been compromised by him by the execution of the notes in suit, said Calvin Dill executing them as surety for Edwin. The objection to the question, however, was that it was not a proper cross-examination, and this, we have no doubt, was correct. The examination in chief had not involved any inquiry as to the statements of Edwin concerning her character, nor as to any knowledge of the witness that her character had been questioned by Edwin.

Miller *et al.* *v.* Dill *et al.*

In the cross-examination of Edwin S. Dill the court excluded questions as to whether he had not, prior to the time of the alleged execution of the notes, made certain statements of a slanderous character concerning Anna Collins, to persons named. The witness had, in chief, only testified in denial of the execution of the notes and of his knowledge of their existence. He had not gone into the question of the consideration of the notes, and had not mentioned any of the slanders involved in the theory of the appellants. There was no possible foundation for the attempted cross-examination, and the court's ruling was proper.

Questions were asked upon the cross-examination of Calvin and of Edwin S. Dill as to when it was that Anna Collins and Harry Dill, a son of Calvin, "had some difficulty * * * with reference to a breach of promise suit." The court excluded the questions as not pertinent to the examination in chief, and we think no error was committed thereby. It is further insisted, however, that the inquiry was proper to show an ill feeling between the Dills and Anna Collins. It is not claimed that it had theretofore been inquired as to the state of feeling between them, and without this it cannot be proper to examine into the character of a difficulty claimed to have generated an ill feeling.

On the cross-examination of Edwin S. Dill it was asked if he then owned property, and if he had not conveyed property, held by him at the time of the alleged execution of the notes; to which questions the court sustained appellees' objections. It is claimed that these questions would have elicited the information that the witness had conveyed property held by him at the time of the alleged execution of the notes, and that he had no property at the time of the examination. The inferences sought to be drawn were that the conveyance was fraudulent, having been intended

to defeat these notes, and therefore an act inconsistent with the evidence of the witness that he had not executed the notes, and had no knowledge of their existence.    Whatever the legitimate inference from a fraudulent or voluntary conveyance, there can be no inference from the mere conveyance of one's property that he is a debtor, or that he does so to defeat a claim the validity of which he denies.    Nor is it true that the examination was proper upon the theory that one liable in slander is subject to evidence of his financial condition.    This was not a suit for slander, and if it were, the inquiry, as a matter of cross-examination, would require some basis from the examination in chief, which is wholly absent here.

A witness for the appellants had testified that Edwin S. Dill, in the summer of 1891, repeated to the witness a statement which he claimed to have made to another concerning Anna Collins, which statement, if untrue, was slanderous.    The witness was then asked if he had ever heard the statement before, and he answered that he had not, but the answer was stricken out by the court without an exception by the appellants.    He was then asked if before that occasion he had heard talk of her condition, to which question the court sustained an objection.    There was no error in the ruling.    Whether that was or was not the first expression of the alleged slander which came to the witness would not aggravate the slander, and appellants were not to be benefited by mitigating it.

It was asked of a witness for the appellants if Edwin S. Dill at any place or time denied the execution of the notes.    The court sustained the objection of the appellees, and appellants offered to prove that the witness and Dill had several times conversed about the notes, and that the latter had not denied their execution.    Upon the rule that silence, when one is re-

Miller *et al. v.* Dill *et al.*

quired to speak, is admissible in evidence, the appellants insist that the offered evidence should not have been excluded. Nothing in the evidence of the witness disclosed the character or extent of the conversation concerning the notes, and, if the rule urged were applicable in this kind of a case, we are in possession of no facts disclosing the importance or the necessity for Dill to deny the execution of the notes. The duty rested upon the appellants to disclose circumstances which required Dill to speak before his failure could become proper evidence.

Complaint is made that an expert was not permitted to testify that a forger, in disguising and imitating handwritings, is more particular at the beginning than at the closing of the effort. The question seems not to have been within the domain of expert testimony. It presented no question of science, and involved no rule not subject to as many variations as there might be efforts at forging. The care of one man is not evidence of the care which may be exercised by another in an effort to commit a forgery, any more than is the skill of one man, in executing the imitation or disguise, evidence of the skill of another.

In numerous instances evidence was admitted, in rebuttal, over the objections of the appellants, which evidence the appellants, in their brief, have classified as "(1) Rumors and general rumors affecting the chastity of Anna Collins; (2) her general reputation for chastity in the neighborhood where she lived in 1891; (3) evidence pretending to be of an expert character, with reference to her physical appearance, and opinions of witnesses as to whether or not she was pregnant in the summer of 1891."

As to the first class, the inquiry, as far as our attention has been directed to the evidence, was not as to rumors simply, but was as to general rumors in the summer of 1891, to the effect that she was pregnant.

As to the second class, there was no instance in which specific objections were made to the evidence, the only objections being that the evidence was "irrelevant, incompetent, and immaterial," and, as often decided, raised no question.

The third class, as given by the appellants, it will be observed, related to the physical appearance of Anna Collins, and to the opinions of witnesses that in the summer of 1891 she was pregnant. If evidence that she was pregnant was admissible, it cannot be seriously maintained that the descriptions of her physical appearance was a subject for expert testimony.

These classes of evidence resolve themselves into this inquiry: Was the fact that she was pregnant at the time of the alleged slander admissible? Was her appearance, as an indication of a condition of pregnancy, competent? And was the existence, at the time of the alleged slander, of general rumors in her neighborhood, to the effect that she was pregnant, admissible?

Counsel for the appellants attack the rulings of the trial court, in admitting the evidence, upon the ground that it was admitted "to smirch the character of Miss Collins," and that when her character was not in issue. The pleadings did not put her character in issue, nor was the question of slander, introduced by the appellants, expressly in issue by the pleadings.

In favor of the genuineness of the notes, the appellants offered evidence, for the first time, that the appellee Edwin S. Dill had uttered a slander against Anna Collins by stating, in effect, that she was pregnant, and that, when threatened with a suit for such slander, he had executed the notes, and delivered them to her as genuine, in settlement of her supposed damages. Such evidence was of a corroborative character,

as tending to supply a consideration for the notes, and to support Anna Collins in her testimony that they came from Edwin S. Dill as genuine. Thus the motive or inducement of Edwin S. Dill to execute the notes was made, by the appellants, an important factor in support of their genuineness. It certainly cannot be seriously contended that evidence of the absence of such motive or inducement was not admissible in rebuttal of the evidence of the appellants. That she was in fact pregnant at the time of the alleged slander, while not conclusive that Edwin did not execute the notes, was evidence that there had been no slander, for the truth of the words spoken disproves the slander. That her appearance, as to increasing in size locally, and her statements that she was pregnant, and that she had missed her menses for some months, was proper evidence, though not conclusive, that she was pregnant, cannot be doubted.

The appearance of pregnancy, and the fact of pregnancy, at the time of the alleged slander, if proper to be considered in determining the influences inducing Edwin S. Dill to give or not to give notes for $1,100.00, it would seem proper also, for the same purpose, to consider the existence at the same time of a general rumor in the neighborhood where she resided that she was pregnant. While it may be true that in a suit for the slander such a rumor would have been admissible only in mitigation of damages, and not in proof or justification of the slander, that conclusion is not at variance with the holding that such general rumor was a proper element in the circumstances affecting the judgment of Edwin S. Dill, or as aiding to break the force, in his mind, of a liability so great that he must execute notes for $1,100.00 in settlement of such liability. When it is borne in mind that the appellants introduced the element of slander into the case to

show a moving inducement to Dill to execute the notes, it seems to have been proper for Dill to rebut the existence of such an inducement, and to show that she was entitled to no damages, or as little damage as possible.

Complaint is also made of the conduct of counsel for the appellees, while conducting the cross-examination of Anna Collins, in continuing to ask questions as to specific acts of dishonesty or immorality subsequent to the alleged slander, which acts the court had, from the beginning, ruled not to be proper subject of cross-examination.

In *Randall* v. *State*, 132 Ind. 539, it was held that persistence in such a course might, when it is carried to the extent of prejudicing the jury, be cause for a new trial. In any case the trial court, having the witness before it, and enabled to observe the effects of the examination, both as to the witness and as to the jury, is better able to judge of the abuse than this court can ever be; and no doubt that court should interfere in time to prevent injustice. This case was tried without a jury, and we will not presume that the court permitted an improper examination to continue, over objections sustained by it, until it was itself prejudiced in favor of the examining party. The experience of the trial judge is that, where such persistence has any influence, it tends to prejudice his mind against the party thus abusing the privileges of the occasion.

It is urged that the court erred in permitting two of the witnesses for the appellee to testify to the genuineness of the signature of Edwin S. Dill to a series of eight bank checks, not papers in the case, and not admitted to be genuine; and to compare them with the signatures in dispute. Out of the protracted examination of these witnesses, concerning the checks, there

was but one exception saved, and that was as to a question whether the signature of said Dill to a check was genuine. The two witnesses mentioned made no comparisons of signatures to which attention has been directed, and the signatures so proved were rejected as evidence upon the objection of the appellants. Proof of the genuineness of the signatures, if not the foundation for comparisons as appellants contend, was harmless.

Complaint is made that the court permitted the appellees to introduce evidence tending to establish the forgery of the notes, out of its regular order. Such practice is always within the sound discretion of the trial court, and, unless made to appear as an abuse of discretion, is not error. Appellants do not show that they were harmed by the action of the court.

There was evidence that the note for $500.00 was offered, at a discount, to John D. Gougar by the appellant Anna Collins; that at the time she did so she was disguised with spectacles and a heavy veil; that he held the offer under advisement until a time when she was to return; that when she did return, as understood, Gougar had had Calvin Dill to be at his (Gougar's) office, and, as Miss Collins was upon the stairway leading to said office, she saw said Dill above her, and immediately retraced her steps and hastened into the street. The retreat from Dill tended to show guilty knowledge as to his interests, and the disguise tended to show guilty purpose as to the proposed transaction with Gougar. An additional circumstance added much strength to the guilty purpose to impose upon Gougar, and that was that a short time previous she had sold to him a forged note upon another, which note named a fictitious payee, and she had indorsed it in that name. This latter note was admitted in evidence over the objection and exception of the appellants, and the question is now made that it was inad-

missible because it had no other tendency than to show the commission of another and distinct offense. While not lending sanction to the inference that it was not competent as relevant to the primary question, the forgery of the notes of the Dills, we think it was competent as a link in the chain of circumstances disclosing her guilty knowledge in attempting to put the Dill note off to Gougar. It aided in explaining her coming to Gougar disguised. Her first transaction with him was connected with the second by the necessity it gave to conceal her identity and to hide the method of putting off on the same person the two promissory notes made to fictitious payees. Guilty knowledge as to the Dill note was of first importance, and the suspicious circumstances attending her two visits to Gougar concerning that note, with whatever collateral circumstances tending to throw light upon such suspicious circumstances, were competent. It must be conceded that she could have offered the former transaction, with the fact that it was a fraud upon Gougar, to explain the purpose in concealing her identity in the second. The connection of the two transactions would then become clear. That the evidence comes from the other side does not break the connection.

The sufficiency of the evidence to sustain the finding of the court has been questioned, and the discussion has been upon the theory that this court would weigh and pass upon the conflicts in the evidence.

This court, in considering the evidence, can only look to that most favorable to the decision of the trial court, and if that, standing alone, is sufficient, the judgment must be upheld. In this view of our duty it is necessary to consider but one line of the great mass of evidence in the record. It was the theory of the appellants that the notes were executed in the summer of 1891, and that date seems necessary to consist with

the existence of the consideration claimed for the notes, the settlement at that time of an alleged slander. That theory was utterly destroyed, if we must believe one line of evidence for the appellees, by proof that the blanks upon which the notes were written were not printed until May, 1893. Upon this evidence alone we would be required to affirm the judgment, so far as it needs support from the evidence.

We do not pass upon all of the many questions discussed by the learned counsel for the appellants, for various reasons. Sometimes questions are urged where no exceptions were reserved; sometimes where no reference is made to the evidence questioned; sometimes where objections to evidence were general, and raised no specific question; and sometimes they were without such discussion as to indicate that they were deemed meritorious.

A general motion was made in the trial court to apportion the costs between the two cases, after consolidation, which motion was overruled. The order of the court, which was manifestly of advantage to all of the parties, was that the further proceedings be had under cause numbered 6,309, the cause in which Collins and Miller were joint defendants.

It is clear, as it must have been when the order was made, that the evidence in either case must be substantially the same as in the other, and the effect of the order was that the trial should be had in number 6,309, and that the finding therein should control the other cause. It is presumed that the order made was followed, and that none of the costs of the trial were made in cause numbered 6,425. The propriety of the order is not questioned by the appellants.

The court did not err in overruling the motion.

The judgment is affirmed.