**SCOTT COUNTY SCHOOL DISTRICT 2 and the Board of Scott County School District 2, in its official capacity, Appellants,**

v.

**Thomas DIETRICH, Appellee.**

**No. 1–985A233.**

Court of Appeals of Indiana, First District.

Nov. 19, 1986.

Charles R. Rubright, George H. Abel, II, Bose McKinney & Evans, Indianapolis, for appellants.

Janet C. Knapp, Richard J. Darko, Tabbert, Cremer & Capehart, Indianapolis, for appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Scott County School District No. 2 and the Board of School Trustees of the Scott County School District No. 2 (referred to collectively as the school board) appeal the trial court's reversal of their dismissal of a teacher. We reverse.

## FACTS

In the light most favorable to the school board's decision, the facts reveal the following. Thomas Dietrich had taught for seventeen (17) years in the Scott County School District No. 2 at the time of his contract cancellation. In the year preceding Dietrich's dismissal, the school corporation issued a reprimand to him for placing himself "in a compromising position with a female student." Record at 52. The reprimand was based upon rumors circulating through the high school that Dietrich was alone in a locked classroom with a female student, that the girl was sitting on Dietrich's lap, that he and the girl were kissing and that he was rubbing her back. As the result of an investigation, the high school principal determined that Dietrich was alone in the room with the girl but that "there was not really anything out of the ordinary going on." Record at 347. The high school principal's report concluded:

> "I do feel that Mr. Dietrich did put himself into a bad situation which creates talk and comments by other students and adults.... I feel this was definitely poor judgment on his part but I do not feel that this situation warrants more than a reprimand. We have made it

clear to him that in the future, any conferences that he should have with a student, especially a female student, should be held with the door open and under no circumstances should any physical contact be made."

Record at 347. The school board's subsequent reprimand, while not charging Dietrich with the unfounded rumors, warned him to not put himself in a position which gave the appearance of impropriety. This reprimand remained in Dietrich's permanent file.

Later in the same school year, some parents expressed concern that Dietrich was "hanging around" the cheerleaders. Acting on those concerns, the school superintendent talked with Dietrich and got Dietrich to agree to "walk the straight and narrow." Record at 82.

The following school year, the school board held a hearing on cancelling Dietrich's permanent teaching contract after a female high school student complained to her principal of Dietrich's conduct towards her. At the hearing held on May 26, 1982, Dietrich was present and represented by counsel. He was afforded the opportunity to testify on his own behalf and cross-examine witnesses.

At the hearing, the school board heard evidence of Dietrich's prior written reprimand and his admonition about the cheerleaders. The board also heard testimony from the female student. She alleged that Dietrich, on different occasions, placed his hand upon her leg, pinched her on the hip on St. Patrick's Day for not wearing green, made sexually implicit comments to her while walking behind her, and commented to her that she had probably already started her family. She also testified that Dietrich required her to occupy the desk in his classroom directly in front of his teacher's desk and that he would sit on the front edge of his desk with both of his feet placed on her desk so that she would be looking between his legs. She further testified that on one occasion when Dietrich was returning students' papers, he pressed the papers against her chest. Dietrich re-

futed some of these accusations, explained some, denied others, and could not recall some of the incidents. The board also heard evidence of the high school girl's reputation as a "talker" and of possible reasons for her to seek vengeance against Dietrich.

At the conclusion of the hearing, the school board voted to cancel Dietrich's permanent teacher's contract. To support its decision, the board issued findings of fact and conclusions of law. Dietrich was employed by a neighboring school corporation the following school year.

Dietrich brought a mandamus action against the school corporation and the school board seeking reinstatement and damages. After a trial in which the court heard additional evidence, the trial court found for Dietrich but made no findings of fact or conclusions of law.

After the school board appealed the trial court's decision, we remanded to the trial court with instructions to make findings of fact and conclusions of law. *Scott County School District 2 v. Dietrich* (1986), Ind. App., 496 N.E.2d 91. On remand, the trial court made the necessary findings and conclusions in favor of Dietrich. The school board then perfected this appeal.

## ISSUE

Did the trial court err when it found no substantial evidence to support the school board's decision to discharge a teacher?

## DISCUSSION AND DECISION

■ In this case, it is imperative to outline the trial court's role in reviewing the school board's decision. In *Stiver v. State* (1936), 211 Ind. 380, 1 N.E.2d 1006, our supreme court held that a trial court's review of a school board's decision to cancel a teacher's contract is limited to determining whether the board followed the proper procedures and whether there is substantial evidence to support the board's decision. *Id.* at 384–85, 1 N.E.2d at 1007. The trial court cannot reweigh the evidence for that is the province of the school board.

*Id.* Our court recently followed *Stiver* in *Harrison-Washington Community School Corp. v. Bales* (1983), Ind.App., 450 N.E.2d 559, 564–65, when we held that the trial court improperly substituted its judgment for that of the school board. *See also Phillippe v. Clinton-Prairie School Corp.* (S.D.Ind.1975), 394 F.Supp. 316. We will not give deference to the trial court's findings of fact since we stand in the same position as the trial court in reviewing the school board's decision. With this standard of review in mind, we turn to the trial court's disposition of the case under consideration.

■ The trial court placed much emphasis on Dietrich's reprimand from March of 1981 to conclude that there was no substantial evidence to support the school board's decision. The trial court held that there was "absolutely no factual basis to support the reprimand" and that the reprimand "was based upon rumors which proved to be totally unfounded." Supplemental Record at 3. This is incorrect. Although it is true that an investigation revealed that Dietrich was not kissing the female student or that she was sitting on his lap, Dietrich was found to be in a classroom alone with the female student with the door closed. This alone was sufficient for the board to warn Dietrich to avoid "placing himself in a compromising position with a female student." Record at 52. Thus, although the investigation disspelled the scandalous rumors, there was still a factual basis for the March, 1981 reprimand. Therefore, the school board properly considered this when deciding whether to terminate Dietrich's contract.

■ Even without this reprimand, there was sufficient evidence through the female student's testimony to support the board's decision. The girl testified at length at the school board hearing about numerous instances of Dietrich's inappropriate conduct towards her. At the hearing, Dietrich refuted, admitted or explained her testimony. The trial court completely discredited the girl's testimony and instead chose to believe Dietrich. However, it was improper

for the trial court to reweigh the evidence or judge the credibility of witnesses. *Harrison-Washington*, at 564–65. Since there is substantial evidence of probative value to support the board's decision to terminate the teacher's contract, the trial court improperly substituted its judgment for that of the school board.[1]

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

ROBERTSON, P.J., and NEAL, J., concur.

---

1. We further note that there was substantial evidence for the board to terminate Dietrich's contract for "other good and just cause" pursuant to Indiana Code section 20–6.1–4–10(a)(5). The board's reasons were neither arbitrary, irrational, unreasonable, or irrelevant to the school board's task of operating a school system free of a teacher's flirtatious conduct, physical touchings, or sexually implicit statements. *See Board of School Trustees, School City of Peru v. Moore* (1941), 218 Ind. 386, 393, 33 N.E.2d 114, 116 (holding that "other good and just cause" provides a school board with broad latitude).